arately. The defendants [Alfred] Cassedy, Bowditch and Jenkins still persisted in their refusal; and said they did not like to proceed on the voyage, with the mate as master. They were then taken on shore, and put into prison. Two days afterwards the consul, together with two American masters, went on board to persuade the crew to go to sea. The mate, by direction of the consul, ordered the ship to be got under weigh for sea. Half of the crew refused at first; but finally all of them then on board, except the defendants Allen, King and Hopp consented. These three last were then also sent on shore, and put in prison with the others, who had been put in prison two days before. The ship afterwards proceeded to sea without them; and they were sent home in another American ship, the Octavia, for trial, and arrived at New Bedford.

Mr. Mills, Dist. Atty., for the United States.

STORY, Circuit Justice, in summing up to the jury said: Upon the facts stated in the evidence, which indeed, is not in its general bearing disputed, the question arises, whether the defendants, or any of them, are guilty of the offence charged in the indictment. And that depends upon another question, whether there was among the defendants, or any two or more of them, a common confederacy or combination to refuse to do further duty on board the ship, and to resist the lawful commands of the officers in regard to the sailing or preparations for the voyage. If there was any such confederacy or combination, or any encouragement by the defendants of each other in such acts of refusal and disobedience, then the offence, in contemplation of law, has been committed, unless some justification of the refusal and disobedience is made out. The defendants seem to have proceeded upon the ground, that they were not bound to service on board after the original master ceased to be such; and that they were not bound to serve under the mate, acting as master, under a regular substituted appointment. This is a sheer mistake of the law. The contract of seamen for the voyage is not suspended or extinguished by the original master's ceasing to be such, by death, by removal, by resignation, or otherwise. They are bound to perform the voyage under any person, who is lawfully substituted master for the voyage; for their engagement is, in substance, an engagement with the owners for the voyage, and not with a particular master, so long as he remains such. It is true, that if a person, substituted as master, is grossly incompetent to the duties of his station from want of due skill or from grossly bad habits, or from profligate and cruel behavior, that may furnish a suitable excuse for a refusal to do duty, or to remain by the ship. But such a case must be clearly made out, beyond all reasonable doubt, and it is not to be presumed, or inferred.

There is no such proof in the present case; and, therefore, it cannot be insisted on. The evidence, so far as it goes, is decidedly favorable to the competency, skill, and good character of the mate. The question then resolves itself into a mere question of fact, upon which the jury will pass their opinion.

Verdict against all the defendants, guilty.

## Case No. 14,746.

### UNITED STATES v. CASTILLERO.

[See U. S. v. Castillero, 2 Black (67 U. S.) 17, dissenting opinion of Mr. Justice Swayne.]

## Case No. 14,747.

### UNITED STATES v. CASTILLERO.

[Nowhere reported; opinion not now accessible.]

## Case No. 14,748.

### UNITED STATES v. CASTOR.

[Cited in U. S. v. Watkins, Case No. 16,649. Nowhere reported; opinion not now accessible.]

## Case No. 14,749.

### UNITED STATES v. CASTRO.

[Cal. Law J. & Lit. Rev. 56.]

District Court, N. D. California. Oct. 30, 1862.

MEXICAN LAND GRANT—SURVEY.

[Where a survey based on a Mexican grant appears to be incorrect, it will be rejected, and a new one ordered.].

It appears, by the expediente in this case, that on the twelfth of June, 1834, there was granted to the successors of Francisco Ma. Castro, then deceased, the lawful ownership of a tract of land known by the name of "San Pablo," and bounded by the ranchos of San Antonio and El Pinole, and by a portion of the Bay of San Francisco. For this tract Francisco Castro had previously, on the twenty-third of April, 1823, obtained a concession from the territorial deputation. The fourth condition of the grant of 1834 declares the land granted to be three square leagues, a little more or less, according to the diseno which accompanies the expediente. On the twenty-third of June of the same year, Joaquin Castro, the son and representative of Francisco Ma. Castro, addressed a petition to the governor, in which he states that, through inadvertence, he neglected in his first petition to ask for the extent included in the diseno annexed, and "only claimed the three square leagues which we formerly occupied. That, as this piece of land is rather too small for the number of cattle grazing on it, he solicits, in the names of the other heirs, and as their agent, that the said petition be understood to include the augmentation of land described in the aforesaid plan." This petition was refer-